AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

**FILED** _____ **ENTERED**
_____ **LODGED** _____ **RECEIVED**

**MAR 02 2020**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____DEPUTY

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| A silver Chevrolet truck, more fully described in Attachment A | ) ) ) ) |

Case No.  MJ20 – 107

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution/Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:

✓ See Affidavit of SA Joseph Parker, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

---

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☐ by reliable electronic means; or ☐ telephonically recorded.

_____
*Applicant's signature*

Joseph Parker, Special Agent, DEA
*Printed name and title*

◉ The foregoing affidavit was sworn to before me and signed in my presence, or
○ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 03/02/2020 _____

_____
*Judge's signature*

City and state: Seattle, Washington

Michelle L. Peterson, United States Magistrate Judge
*Printed name and title*

---

USAO: 2020R00179

1    **AFFIDAVIT**

2    County of Island          )
                                )
3                               )
     State of Washington        )
4

5         Joseph Parker, Special Agent with the Drug Enforcement Administration (DEA),

6    being first duly sworn on oath, deposes and says:

7

8                            **INTRODUCTION**

9         1.    This affidavit is made in support of an application for a warrant to search

10   the following vehicle (hereafter "**SUBJECT VEHICLE**"), as set forth in Attachment A.

11        2.    The **SUBJECT VEHICLE** is a silver 1992 Chevrolet GMT-400 bearing

12   Washington license plate C69146P, registered to Kara L. Wood at 3473 E Division St.,

13   Mount Vernon, Washington 98274.

14        3.    The **SUBJECT VEHICLE** is currently in the custody of the Island County

15   Sheriff's Office, at 695 Mobius Loop, Oak Harbor, Washington.

16        4.    I seek the Court's authorization to search the **SUBJECT VEHICLE** for

17   evidence of distribution and possession with intent to distribute controlled substances, in

18   violation of Title 21, United States Code, Section 841.  The evidence I seek is described

19   in Attachment B.

20

21                         **AGENT BACKGROUND**

22        5.    I am a Special Agent with the Drug Enforcement Administration (DEA),

23   United States Department of Justice, and have been so employed since July 2017.  In my

24   capacity as a Special Agent, I investigate violations of the Controlled Substances Act,

25   and related criminal offenses.  I am currently assigned to the Seattle Field Division,

26   Seattle Division Office, HIDTA Interdiction Group D-22.

27        6.    Prior to becoming a Special Agent, I worked as a Police Officer in the State

28   of Illinois for Glendale Heights Police Department from 2013 to 2015, and for the Elgin

AFFIDAVIT OF SA JOSEPH PARKER - 1
USAO # 2020R00179

1  Police Department from 2015 to 2017.  To become a Police Officer, I attended the
2  Suburban Law Enforcement Academy at the College of DuPage and completed 480
3  hours of basic training instruction.  While working as a Police Officer, I received an
4  additional 40 hours of training in basic investigations and 40 hours of training to become
5  certified as a gang enforcement specialist.  To become a Special Agent, I attended Basic
6  Agent Training in Quantico, Virginia, graduating in July 2017.  I have completed over
7  800 hours of instruction to include focus on criminal investigations, surveillance,
8  undercover operations, drug identification, firearms, defensive tactics, legal review, and
9  drug trafficking organizations (hereinafter "DTOs").
10       7.     During my career, I have been involved in numerous narcotics arrests as
11  either the primary or assisting officer/agent.  I have participated in investigations
12  involving organizations trafficking controlled substances that have resulted in arrests of
13  drug traffickers and seizures of controlled substances.  In addition, I have participated in
14  several wire intercept investigations.  Because of this experience and training, I am
15  familiar with common methods of investigating drug trafficking and manufacturing
16  organizations, and have become familiar with the methods of operation of drug
17  traffickers and manufacturers, including, but not limited to: their methods of importing,
18  exporting, storing, concealing, and packaging drugs; their methods of transferring and
19  distributing drugs; their use of cellular telephones and telephone pagers; their use of
20  numerical codes, code words, and counter surveillance techniques; and other methods of
21  avoiding detection by law enforcement.
22       8.     I am familiar with the various methods of packaging, delivering,
23  transferring, and laundering drug proceeds.  Additionally, through training and
24  experience, I can identify illegal drugs by sight and texture.  I am trained to use a field
25  test kit to identify the presumptive presence of controlled substances.  I have become
26  familiar with common slang terms and codes used by drug traffickers and their
27  associates to refer to drugs, money, guns, vehicles, compartments, and other things
28  related to their drug trafficking.  I have learned how they attempt to thwart law

AFFIDAVIT OF SA JOSEPH PARKER - 2
USAO # 2020R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  enforcement by using code terms, multiple cell phones, concealed compartments, "stash
2  houses," and other means.  I have become familiar with the ways in which drugs
3  commonly are transported, stored, and sold, and in what quantities and at what prices in
4  this area, and how members of a conspiracy communicate with each other.  I am also
5  familiar with common ways in which drug traffickers attempt to profit from their illegal
6  activities, by hiding drug proceeds in various places to conceal the illegal source or their
7  ownership, including hiding and transporting bulk cash, sending funds through wire
8  transfers or bank accounts in other persons' names, or investing in assets placed in other
9  persons' names. Throughout my law enforcement career, I have spoken with, worked
10 with, and gained knowledge from numerous experienced federal, state, and local
11 narcotics officers.

12         9.     Because of my personal participation in this investigation and because of
13 information provided to me by other agents and officers, I am familiar with the facts and
14 circumstances of this investigation.  My familiarity with this investigation is further
15 based on information relayed to me by other law enforcement personnel, discussions
16 with other experienced officers, detectives, and agents, review of law enforcement
17 reports, and interviews of witnesses.  My experience in investigating drug offenders, my
18 education, my conversations with senior drug agents, and my specialized training
19 formed a basis of opinions and conclusions set forth below.

20         10.    The facts in this affidavit and in the attached document, are based on my
21 training and experience, and information obtained from other agents, detectives,
22 analysts, and witnesses. The information outlined below is provided for the limited
23 purpose of establishing probable cause and does not contain all details or all facts of
24 which I am aware that relate to this investigation.

25
26                           **SUMMARY OF PROBABLE CAUSE**
27         11.    On February 26, 2020, a grand jury in the Western District of Washington
28 indicted SHAWN GREEN on two counts of Possession of Over 500 Grams of

AFFIDAVIT OF SA JOSEPH PARKER - 3
USAO # 2020R00179

1  Methamphetamine with Intent to Distribute, in violation of Title 21, United States Code,

2  Sections 841(a)(1) and 841(b)(1)(A).

3        12.    Count 1 of the Indictment arose from an incident on January 25, 2018,

4  when Skagit County detectives located over a pound of methamphetamine in a vehicle

5  GREEN was riding in.

6        13.    Count 2 of the Indictment arose from an incident on September 19, 2019,

7  when a Washington State Patrol Trooper located over a pound of methamphetamine in a

8  backpack that GREEN was wearing while driving a motorcycle.

9        14.    On February 26, 2020, an arrest warrant was issued in connection with this

10  indictment.

11        15.    SA Parker was informed that GREEN had a court date set for March 2,

12  2020, in Island County, Washington for a state charge he was facing related to Count 2

13  of the Indictment.  SA Parker notified the Island County Sheriff's Office (ICSO) that

14  GREEN had an active arrest warrant and requested their assistance in detaining GREEN

15  if he arrived at court.  ICSO acknowledged the warrant and agreed to assist in arresting

16  GREEN.

17        16.    On February 29, 2020, ICSO Deputy Engert overheard Officer Horn with

18  the Oak Harbor Police Department conduct a records check of GREEN through

19  dispatch.  Officer Horn made contact with GREEN at a local 7-Eleven store in Oak

20  Harbor, Washington.  Deputy Engert requested that GREEN be detained on scene until

21  he was able to respond to Officer Horn's location.

22        17.    Once on scene, Deputy Engert observed a 1992 Chevrolet GMT-400

23  bearing Washington license plate C69146P (the **SUBJECT VEHICLE**) and GREEN in

24  the driver's seat.  Through a records check, investigators determined that the **SUBJECT**

25  **VEHICLE** was registered to Kara L. Wood at 3473 E Division St., Mount Vernon,

26  Washington 98274.  GREEN ADVISED SA PARKER THAT THE SUBJECT VEHICLE WAS REGISTERED IN SOMEONE ELSE'S NAME, BUT THAT THE VEHICLE WAS

27        18.    Deputy Engert confirmed the arrest warrant and took GREEN into custody  ITS.

28  without incident.  GREEN was searched incident to arrest.  GREEN yelled at deputies  JmP

AFFIDAVIT OF SA JOSEPH PARKER - 4
USAO # 2020R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 and officers on scene that they did not have permission to search the **SUBJECT**
2 **VEHICLE**. The **SUBJECT VEHICLE** was not searched, but a narcotics canine was
3 requested to conduct a sniff of the **SUBJECT VEHICLE**.

4       19.    Officer Hatcher of Anacortes Police Department (APD) and his canine
5 partner, T-Bone, arrived on scene to conduct the sniff of the **SUBJECT VEHICLE**.[1]
6 Officer Hatcher advised deputies that T-Bone alerted to the presence of narcotics
7 emitting from the **SUBJECT VEHICLE**. The **SUBJECT VEHICLE** was then secured
8 with evidence tape and transported to a secure storage facility located at 695 Mobius
9 Loop, Oak Harbor, Washington, pending a search warrant application.

10

11                 **KNOWLEDGE BASED ON TRAINING AND EXPERIENCE**

12       20.    Based upon my training and experience, and my discussions with other
13 experienced officers and agents involved in drug and firearms investigations, I know the
14 following:

15         a.    Traffickers of controlled substances, and those who assist them,
16     maintain and tend to retain accounts or records of their drug trafficking activities,
17     including lists of drug quantities and money owed, telephone records including
18     contact names and numbers, photographs, and similar records of evidentiary value.
19     These items are generally kept in locations where drug traffickers believe their
20     property is secure and will remain undetected from law enforcement, such as
21     inside their homes, vehicles, storage units, and businesses.

22         b.    Traffickers of controlled substances commonly maintain records
23     reflecting names or nicknames, addresses, and/or telephone numbers of their
24     suppliers, customers and associates in the trafficking organization. Traffickers
25     commonly maintain this information in books or papers as well as in their cellular

26

27 _____

28 [1] An affidavit regarding T-Bone's training to detect narcotics is attached as Exhibit 1, incorporated herein by reference.

AFFIDAVIT OF SA JOSEPH PARKER - 5
USAO # 2020R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  telephones.  Traffickers often maintain cellular telephones for ready access to their

2  clientele and to maintain their ongoing drug trafficking.  Traffickers often change

3  their cellular telephone numbers to avoid detection by law enforcement, and it is

4  common for traffickers to use more than one cellular telephone at any one time.

5       c.  Traffickers maintain evidence of their criminal activity at locations

6  that are convenient to them, including their residences, residences of family

7  members or other trusted associates, their vehicles, and storage lockers.  This

8  evidence often includes not only contraband and paraphernalia, but also financial

9  records, older cellular telephones, records of property and vehicle ownership,

10  records of property rented, and other documentary evidence relating to their

11  crimes.  Drug traffickers sometimes take or cause to be taken photographs and/or

12  video recordings of themselves, their associates, their property, and their illegal

13  product.  These individuals often maintain these photographs and recordings in

14  their possession or at their premises.

15       d.  During the execution of search warrants, it is common to find

16  papers, letters, billings, documents, and other writings which show ownership,

17  dominion, and control of vehicles, residences, and/or storage units.

18       e.  Persons trafficking and using controlled substances commonly sell

19  or use more than one type of controlled substance at any one time.

20       f.  Traffickers frequently maintain items necessary for weighing,

21  packaging and cutting drugs for distribution.  This paraphernalia often includes,

22  but is not limited to, scales, plastic bags and cutting/diluting agents and items to

23  mask the odor of drugs.

24       g.  It is common for drug dealers to also be users of their product, and

25  that it is common for the drug user to maintain paraphernalia associated with the

26  use of controlled substances.

27       h.  Traffickers frequently maintain records, books, notes, ledgers, travel

28  documents, and other papers relating to the transportation and distribution of

AFFIDAVIT OF SA JOSEPH PARKER - 6
USAO # 2020R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

controlled substances, including travel records, in locations convenient to them, such as their residences, residences of family members and trusted associates, and vehicles.

i.      Traffickers frequently keep on hand amounts of United States currency in order to maintain and finance their ongoing narcotics business. They commonly deal in currency because of its untraceable nature. They sometimes convert their illicit currency into currency equivalents such as cashier's checks and money orders. Traffickers often conceal in secure locations such as their residences and vehicles currency, financial instruments, precious metals, jewelry, and other items of value which are the proceeds of drug transactions and evidence of consequential financial transactions, relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in drug trafficking activities, and financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, and other records showing the management of such assets. Traffickers often have money counters.

j.      Traffickers often maintain weapons, including guns, ammunition, and body armor, in secure locations such as their residences and vehicles, in order to protect their drugs and drug proceeds.

k.      Traffickers often have false identification documents and identification documents in the names of others in order to conceal their identities.

l.      Traffickers very often place assets in names other than their own, or use fictitious names and identification, to avoid detection of these assets by government agencies, and that even though these assets are in other persons names, the drug dealers actually own and continue to use these assets and exercise dominion and control over them.

m.      Illegal drug trafficking is a continuing activity over months and even years. Illegal drug traffickers will repeatedly obtain and distribute controlled

AFFIDAVIT OF SA JOSEPH PARKER - 7
USAO # 2020R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     substances on a somewhat regular basis, much as any distributor of a legitimate
2     commodity would purchase stock for sale and, similarly, such drug traffickers will
3     have an "inventory" which will fluctuate in size depending upon various factors to
4     include the demand and supply for the product. I would expect the trafficker to
5     keep records of his illegal activities for a period of time extending beyond the time
6     during which he actually possesses illegal controlled substances, in order that he
7     can maintain contact with his criminal associates for future drug transactions, and
8     so that he can have records of prior transactions for which, for example, he might
9     still be owed money, or might owe someone else money. These records are often
10    created in code.

11          21.    As noted above, drug dealers use cellular telephones as a tool or
12    instrumentality in committing their criminal activity. They use them to maintain contact
13    with their suppliers, distributors, and customers. They prefer cellular telephones because,
14    first, they can be purchased without the location and personal information that land lines
15    require. Second, they can be easily carried to permit the user maximum flexibility in
16    meeting associates, avoiding police surveillance, and traveling to obtain or distribute
17    drugs. Third, they can be passed between members of a drug conspiracy to allow
18    substitution when one member leaves the area temporarily. Since cellular phone use
19    became widespread, most drug dealers I have contacted have used one or more cellular
20    telephones for his or her drug business. I also know that it is common for drug traffickers
21    to retain in their possession phones that they previously used, but have discontinued
22    actively using, for their drug trafficking business. Based on my training and experience,
23    the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or
24    crimes. This includes the following:

25          a.    The assigned number to the cellular telephone (known as the mobile
26          directory number or MDN), and the identifying telephone serial number
27          (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN),
28          (International Mobile Subscriber Identity, or IMSI), or (International Mobile

AFFIDAVIT OF SA JOSEPH PARKER - 8
USAO # 2020R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Equipment Identity, or IMEI) are important evidence because they reveal the

2    service provider, allow us to obtain subscriber information, and uniquely identify

3    the telephone.  This information can be used to obtain toll records, to identify

4    contacts by this telephone with other cellular telephones used by co-conspirators,

5    to identify other telephones used by the same subscriber or purchased as part of a

6    package, and to confirm if the telephone was contacted by a cooperating source or

7    was intercepted on a wiretap here or in another district.

8         b.    The stored list of recent received calls and sent calls is important

9    evidence.  It identifies telephones recently in contact with the telephone user.  This

10   is valuable information in a drug investigation because it will identify telephones

11   used by other members of the organization, such as suppliers, distributors and

12   customers, and it confirms the date and time of contacts.  If the user is under

13   surveillance, it identifies what number he called during or around the time of a

14   drug transaction or surveilled meeting.  Even if a contact involves a telephone user

15   not part of the conspiracy, the information is helpful (and thus is evidence)

16   because it leads to friends and associates of the user who can identify the user,

17   help locate the user, and provide information about the user.  Identifying a

18   defendant's law-abiding friends is often just as useful as identifying his drug-

19   trafficking associates.

20        c.    Stored text messages are important evidence, similar to stored

21   numbers.  Agents can identify both drug associates, and friends of the user who

22   likely have helpful information about the user, his location, and his activities.

23        d.    Photographs on a cellular telephone are evidence because they help

24   identify the user, either through his or her own picture, or through pictures of

25   friends, family, and associates that can identify the user.  Pictures also identify

26   associates likely to be members of the drug trafficking organization.  Some drug

27   dealers photograph groups of associates, sometimes posing with weapons and

28   showing identifiable gang signs.

AFFIDAVIT OF SA JOSEPH PARKER - 9
USAO # 2020R00179

1           e.      Stored address records are important evidence because they show the

2   user's close associates and family members, and they contain names and

3   nicknames connected to phone numbers that can be used to identify suspects.

4

5                               **CONCLUSION**

6   22.    For the foregoing reasons, there is probable cause to believe that the

7   **SUBJECT VEHICLE**, more particularly described in Attachment A, contains evidence

8   of violations of Title 21, United States Code, Section 841(a)(1) (Distribution and

9   Possession w/Intent to Distribute Controlled Substances), as described in Attachment B.

10

11                           SA Joseph Parker, Affiant

12                           Drug Enforcement Administration

13

14

15   Subscribed and sworn before me on this 2nd day of March, 2020.

16

17

18                           MICHELLE L. PETERSON

19                           United States Magistrate Judge

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SA JOSEPH PARKER - 10
USAO # 2020R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# EXHIBIT 1

APD Case # 20-40143/

WA LIC/ C69146P



# Anacortes Police Department
1218 24th Street, Anacortes, WA

I, Officer Tyler Hatcher, am a Police Officer for the Anacortes Police Department in Washington State and have been so employed since February of 2015. I have been a Canine Handler since January of 2019. I am permanently assigned to the Anacortes Police Department in Anacortes Washington.

Police K9 T-Bone is my currently assigned canine and has been in APD's employ since February of 2016. Police K9 T-Bone is trained in the detection of illegal narcotics and is trained to search for, and alert to, the presence of the odors of Cocaine, Heroin, Methamphetamine, Ecstasy, and their respective derivatives. Police K9 T-Bone and I successfully completed over 200 instructional hours inclusive of academic and practical training, evaluation and testing devoted to narcotics detection.

Police K9 T-Bone has been accredited in compliance with Washington Administrative Code and has also received certification with the Washington State Police Canine Association (WSPCA). Accreditation standards requires that all trained odors are tested in each of the following areas: Outside area searches, building searches, and vehicles (both interior and exterior). Further training was also completed searching luggage and packages.

As a handler I am trained to watch for changes of behavior exhibited by Police K9 T-Bone when the odor of narcotics is detected. Police K9 T-Bone is trained to give a "Passive Response" upon locating the odor of above mentioned controlled substances. Police K9 T-Bone gives a "sit" or "down" (depending on height) response after locating the specific area where the odor of narcotics is being emitted. This response is accepted by current narcotics canine standards.

Police K9 T-Bone and I train together on a consistent and ongoing basis with other handlers and certified trainers, from the northwest region. The training consists of varied search scenarios, set times, and quantities and types of narcotics, as well as distractions. Police K9 T-Bone has proven reliable and consistent in all phases of this training.

I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT.

Signed: _Tyler Hatcher #0985_ Date & Place: _2/29/20  Oak Harbor, WA_

=======================================================================================

☒  **[CHECK IF SUBMITTING BY ELECTRONIC DEVICE]** This declaration was submitted to the issuing judge or magistrate using an electronic device that is owned, issued, or maintained by a criminal justice agency.

Signed this _29th_ day of _February_ , 20 _20_ , at _Oak Harbor_ ,      Washington

Law Enforcement Officer's Signature          /Signed Electronically/ T. Hatcher, #0985, APD

Law Enforcement Officer's Full Name           Tyler S. Hatcher

Agency Badge/Serial or Personnel Number       #0985

Agency Name                                   Anacortes Police Department

## ATTACHMENT A

### (Location to be Searched)

The **SUBJECT VEHICLE** is a silver 1992 Chevrolet GMT-400 bearing
Washington license plate C69146P, registered to Kara L. Wood at 3473 E Division St.,
Mount Vernon, WA 98274.

The **SUBJECT VEHICLE** is currently held in the custody of the Island County
Sheriff's Office at 695 Mobius Loop, Oak Harbor, Washington.

## ATTACHMENT B

### (Items to Be Searched For and Seized)

From the **SUBJECT VEHICLE**, described in Attachment A of this warrant, the government is authorized to search for and seize the following items, which are evidence and/or fruits of the commission of the crime of distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1):

1.      Any suspected controlled substances, for example, methamphetamine;

2.      Paraphernalia for packaging, smuggling, processing, diluting, manufacturing, weighing, and distributing controlled substances, for example: hidden compartments, scales, blenders, funnels, sifters, grinders, glass panes, mirrors, razor blades, plastic bags, heat sealing devices, and diluting agents such as inositol, vitamin B12, etc.;

3.      Firearms and firearm-related items, including magazines, ammunition, holsters, and body armor, or other dangerous weapons;

4.      Documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of controlled substances;

5.      Items identifying drug customers and drug suppliers, such as, telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, and similar items;

6.      Currency and financial records that show income from, or activity related to, drug trafficking, including bank records, money transfer records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; and other records that show income and expenditures, net worth including receipts for personal property, negotiable instruments, bank drafts, cashiers checks, and similar items;

7.      Photographs, videos, digital cameras, and similar items depicting the vehicle occupants, suspected buyers or sellers of controlled substances, controlled substances, drug distribution paraphernalia, and assets derived from the distribution of controlled substances;

8.      Bills of sale, vehicle registration, licensing documents, or other evidence relating to the purchase, ownership, rental, or control of the vehicle, and similar records of other property owned or rented by the occupants that is evidence of income from drug trafficking and locations of drugs and money;

9.      Items of personal property that tend to identify the person(s) in control, or ownership of the vehicle, including canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys;

10.     Identification documents, including passports, visas, alien registration cards, any and all travel documents, immigration documents, driver's licenses, identification cards, and social security cards;

11.     Documents indicating travel in interstate and foreign commerce, to include airline tickets, notes and travel itineraries; airline schedules; gas receipts, bills; charge card receipts; hotel, motel, and car rental statements; correspondence with travel agencies and other travel related businesses; airline, rent a car, and hotel frequent flier or user cards and statements; passports and visas; telephone bills; photographs of foreign locations; and papers relating to domestic and international travel; and

12.     Cellular phones and other mobile communication devices, such as smartphones. Investigating agents will seek an additional search warrant before searching any such devices seized pursuant to this warrant.